*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HANTZ GROUP INC, HANTZ TAX AND
BUSINESS, LLC, HANTZ FINANCIAL
SERVICES INC, HANTZ HOLDINGS INC,
HANTZ AGENCY, BRIAN W LAURAIN,

      Plaintiffs-Appellants,

v

STEPHEN PAUL SOLVERSON, NICOLE BELL,
RAYMOND JAMES AND ASSOCIATES INC,
CHARLES FRANK TOURANGEAU, NICHOLAS
OMICIOLI,

      Defendants/Counterplaintiffs-
      Appellees.

.

UNPUBLISHED
April 29, 2025
1:27 PM

No. 369561
Macomb Circuit Court
LC No. 2023-002986-CB

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Plaintiffs Hantz Group, Inc. ("HG"), Hantz Tax and Business, LLC ("HTB"), Hantz Financial Services, Inc. ("HFS"), Hantz Holdings Inc. ("Hantz Holdings"), Hantz Agency ("HA"), and Brian W. Laurain[1] appeal as of right the trial court opinion and order compelling the entirety of plaintiffs' claims into Financial Industry Regulatory Authority ("FINRA") arbitration under MCR 2.116(C)(7). Plaintiffs argue that the trial court erred by forcing non-FINRA members into FINRA arbitration. We reverse and remand.

## I. BACKGROUND

This case stems from alleged violations of nonsolicitation agreements between HFS and four former HFS employees—defendants Stephen Paul Solverson, Nicole Bell, Charles Frank Tourangeau, and Nicholas Domicile. HFS is a broker-dealer licensed to sell securities and

---

[1] Laurain no longer seeks appellate review of the trial court's decision.

insurance and was a wholly-owned subsidiary of HG, which is a holding company that also oversees subsidiaries HTB and HA. HTB provides tax and business consulting services, and HA provides property and casualty insurance. The remaining plaintiff, Hantz Holdings, is a state-chartered trust bank, independent from HG.

Defendants resigned from their financial advisor and consultant positions at HFS on the same day that they joined Raymond James & Associates, Inc. (RJA), a broker-dealer that allegedly competes with HFS in offering investment advisory services. HFS, RJA, and defendants are all members of FINRA, a self-regulatory nongovernment body overseeing brokers and broker-dealer firms in the United States. FINRA enforces rules governing broker conduct and provides arbitration services for industry disputes. The FINRA rules require FINRA members and associated persons to arbitrate disputes that arise among industry members.

Plaintiffs allege that defendants raided plaintiffs' corporate clients upon joining RJA. Accordingly, plaintiffs filed a complaint and moved for a preliminary injunction asserting claims for, among other things, breach of nonsolicitation covenants and tortious interference against Solverson, Bell, and RJA. Simultaneously, HFS filed an almost identical Statement of Claim with FINRA. Subsequently, the parties entered a stipulated injunction in the trial court that was consistent with the language of the relevant postemployment nonsolicitation covenants; the same order was later entered in FINRA proceedings. Additionally, plaintiffs filed an amended complaint with nine counts requesting: injunctive relief; temporary injunctive relief against Tourangeau and Omiciolo on behalf of HFS only; and alleging breach of contract against Individual Defendants; accounting; tortious interference; breach of fiduciary duties as to Tourangeau;[2] conversion against all defendants; civil conspiracy; and intentional infliction of emotional distress upon Laurain.

Defendants moved for summary disposition under MCR 2.116(C)(7), arguing that the trial court should compel plaintiffs' claims to be determined in FINRA arbitration, or in the alternative, the trial court should stay the case pending the outcome of the FINRA arbitration. Additionally, defendants moved under MCR 2.116(C)(8) to dismiss plaintiffs' claims as a matter of law on the basis that plaintiffs failed to state a valid claim. The trial court granted defendants' motion pursuant to MCR 2.116(C)(7) and compelled the parties into FINRA arbitration.[3] Plaintiffs now appeal.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(7). *Champine v Dep't of Transp*, 509 Mich 447, 452; 983 NW2d 741 (2022). In reviewing a motion under MCR 2.116(C)(7), this Court accepts as true, and construes in plaintiff's favor, well-pleaded allegations in the pleadings, affidavits, depositions, admissions, and documentary evidence submitted by the parties to determine whether a genuine issue of

---

[2] Plaintiffs agreed to dismiss their fiduciary duty claim against Tourangeau.

[3] The trial court determined that plaintiffs' argument for dismissal as a matter of law pursuant to MCR 2.116(C)(8) was "moot" because the parties were ordered to FINRA arbitration.

material fact exists. *Citizens Ins Co of America v Univ Physician Group*, 319 Mich App 642, 648; 902 NW2d 896 (2017).

## III. DISCUSSION

The trial court erred by granting summary disposition to defendants because the nonsignatory plaintiffs did not agree to arbitrate their claims.

In various years, during their employment, all four individual defendants signed nonsolicitation agreements with HG as a condition of participating in its "group practice" program under its "family office" model, which allowed brokers to pool resources across HG subsidiaries to maximize compensation. It is undisputed that the nonsolicitation and confidentiality agreements on which the plaintiffs based their claims neither contain nor reference arbitration clauses. The parties in this case agree that they do not have an agreement to arbitrate; however, defendants argue that arbitration should be compelled for judicial economy because the litigation is between the same parties and plaintiffs' claims are based on the same facts arising from the solicitation and transfer of securities accounts from HFS. We disagree with defendants.

Generally, "[s]ummary disposition under MCR 2.116(C)(7) is appropriate when the parties have entered a valid and enforceable arbitration agreement." *Registered Nurses, Registered Pharmacists Union v Hurley Med Ctr*, 328 Mich App 528, 535; 938 NW2d 800 (2019) (quotation marks and citation omitted). Moreover, when assessing whether a dispute is exclusively subject to arbitration, "courts must first determine whether an arbitration agreement has been reached by the parties." *Galea v FCA US LLC*, 323 Mich App 360, 369; 917 NW2d 694 (2018) (quotation marks and citation omitted). An arbitration agreement does not exist "unless it was formed by the mutual assent of the parties." *Id*. Importantly, "[a] party cannot be required to arbitrate an issue which [it] has not agreed to submit to arbitration." *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016) (alteration in original). Additionally, the existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court. *Fromm v Meemic Ins Co,* 264 Mich App 302, 305; 690 NW2d 528 (2004).

In this case, HG, along with its multiple subsidiaries, had nonsolicitation agreements with defendants, who were formerly employed by one of the subsidiaries—HFS. HFS is the only plaintiff among them that is a FINRA member, and therefore, the only party with an arbitration agreement with defendants. It is only HFS's membership in FINRA that triggered the agreement to arbitrate in this case. Defendants argue that, because the claims raised by the nonsignatory plaintiffs arise from the same set of facts and issues covered by the arbitration agreement, principles of judicial economy favor resolving all claims—by all plaintiffs—in arbitration. Put differently, the issue appears to be that even though HG and the remaining plaintiff subsidiaries are not a party to the arbitration agreement, they should nevertheless be compelled to arbitrate simply because one of the subsidiaries, HFS, is subject to arbitration. Specifically, defendants argue that because HG and subsidiaries have gained and rely on the business with HFS, the claims against defendants would not exist "but-for the relationship" between individual defendants and HFS. Defendants emphasize that only because of defendants' employment connections with HFS and the customers they serviced in their role as advisors at HFS, "the Hantz Entities have no separate bases or facts to support any claim."

In its Opinion and Order, the trial court made its ruling based on the following reasoning: Plaintiffs argue that the Hantz Plaintiffs['] claims cannot be compelled into FINRA arbitration. In support of this position, Plaintiffs rely on *Hantz Group, Inc et al v Van Duyn*, et al, unpublished per curiam opinion of the Court of Appeals, decided June 30, 2011 (Docket No. 294699). In *Van Duyn*, despite the fact that HFS was the only FINRA member, the trial court ordered all of the parties, including the non-FINRA member Hantz entities, into FINRA arbitration. *Id.* at 2. The Court of Appeals reversed the trial court and held that "the trial court erred in dismissing plaintiffs' claims and ordering them into arbitration as they did not agree in writing or otherwise to arbitrate claims arising out of the non-solicitation agreements and cannot be compelled to do so." *Id*. at 4.

In their motion, Defendants acknowledged the unpublished *Van Duyn* opinion and "recognize the Court's jurisdiction here but properly contend that the Court should send all parties and all claims to join RJA and HFS in arbitration, or stay this action, for judicial economy and to avoid divergent results in separate litigations." See Defendants' Motion, p. 7. This Court agrees. Accordingly, this Court compels the Hantz Plaintiffs' claims to FINRA arbitration.

It is unclear why the lower court did not make specific findings regarding whether plaintiffs—other than FHS—were contractually obligated to arbitrate their claims. Instead, the trial court concluded that "judicial economy and to avoid divergent results in separate litigations" justified compelling parties to arbitrate, even though they never agreed to do so. Summarily, the trial granted summary disposition pursuant to MCR 2.116(C)(7) without a decision on the merits but on the basis of judicial economy. There is no caselaw that supports judicial economy alone as a sufficient reason to compel arbitration if one party does not agree. Arbitration is fundamentally a matter of contract, and a party cannot be required to arbitrate an issue they have not agreed to submit to arbitration. *Legacy Custom Builders, Inc v Rogers*, 345 Mich App 514, 523; 8 NW3d 207 (2023). Moreover, judicial economy, while a consideration, "is not an overriding concern" of a valid arbitration agreement. *Kauffman v The Chicago Corp*, 187 Mich App 284, 290; 466 NW2d 726 (1991). Therefore, we reverse the trial court's ruling to send all claims to arbitration and closing the case outright, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young